IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GP ROADWAY SOLUTIONS, INC.,  )  CIVIL NO. 13-00282 JMS-KSC
 )
    Plaintiff/Counterclaim  )  ORDER (1) DENYING PLAINTIFF'S
    Defendant,  )  MOTION FOR SUMMARY
 )  JUDGMENT, AND (2) GRANTING
    vs.  )  IN PART AND DENYING IN PART
 )  DEFENDANT'S MOTION FOR
LABORERS INTERNATIONAL  )  SUMMARY JUDGMENT
UNION OF NORTH AMERICA  )
LOCAL 368,  )
 )
    Defendant/Counterclaimant.  )
_____  )

## ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court are Cross-Motions for Summary Judgment in this action brought pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to vacate or confirm an arbitration award. Plaintiff/Counterclaim Defendant GP Roadway Solutions, Inc. ("Plaintiff" or "GP Roadway") moves for summary judgment, contending that an arbitrator exceeded his authority under the relevant collective bargaining agreement ("CBA") when awarding certain remedies to Plaintiff's employee. Doc. No. 24. On the other

hand, Defendant/Counter-claimant Laborers International Union of North America Local 368 ("Defendant" or "Union") cross-moves for summary judgment, seeking (1) confirmation of the arbitration award, and (2) an award of attorney's fees and costs for Plaintiff's bad faith conduct in refusing to pay all of the award in a timely manner. Doc. No. 26.

Based on the following, Plaintiff's Motion is DENIED, and Defendant's Cross-Motion is GRANTED in part and DENIED in part. The arbitration award is CONFIRMED. The court finds no bad faith conduct on the part of Plaintiff and thus declines to award Defendant attorney's fees or costs on that basis. The court awards Defendant prejudgment interest in this action under 28 U.S.C. § 1961.

## II. BACKGROUND

### A. Factual Background

#### 1. The Arbitration

GP Roadway is an employer engaged in commerce under the LMRA. Doc. No. 25, Pl.'s Concise Statement of Facts ("CSF") ¶ 1.[1] The Union is a labor organization under the LMRA, and represents certain employees of GP Roadway.

---

[1] Where the parties do not dispute a particular fact, the court cites directly to Plaintiff's or Defendant's CSF.

*Id.* ¶ 2. GP Roadway and the Union are parties to a CBA, covering the period of September 1, 2010 to August 31, 2013, that includes binding grievance and arbitration provisions. Doc. No. 27, Def.'s CSF ¶¶ 2, 4.

Kuiola Kelly ("Kelly," or "grievant"), employed by GP Roadway, is a member of the Union who is covered under the CBA. *Id.* ¶ 3. On May 11, 2012, GP Roadway discharged Kelly for insubordination. Doc. No. 27-1, Oliver Decl. ¶ 9. The Union filed a grievance on behalf of Kelly under the CBA on May 17, 2012, seeking Kelly's immediate reinstatement, and payment of all lost wages and benefits. Doc. No. 27, Def.'s CSF ¶ 6. When the parties could not resolve the grievance, they mutually selected Mario R. Ramil ("Ramil" or the "Arbitrator") as the Arbitrator from the panel of names in the CBA. *Id.* ¶ 8; Doc. No. 25, Pl.'s CSF ¶ 5. Ramil held arbitration hearings over five days in December 2012. Doc. No. 27, Def.'s CSF ¶ 11. His decision sets forth the issues presented in the arbitration as: "(1) whether the discharge of the grievant was in compliance with the terms of the [CBA], and (2) if not, what are the appropriate remedies for the grievant and the union." Doc. No. 32-1, Def.'s Ex. 13 at 2.

Prior to the arbitration hearings, the Union served certain discovery requests on GP Roadway, invoking Hawaii Revised Statutes ("HRS") § 657A-17(c), which is a provision of the Hawaii Uniform Arbitration Act. Doc. No. 1,

Compl. ¶ 20; Doc. No. 8, Answer ¶ 8.  In opposition to the Union's motion to

compel and for sanctions, GP Roadway argued to the Arbitrator that Hawaii law

does not apply to arbitrations under a CBA governed by Section 301 of the LMRA,

contending that "such arbitrations are completely governed by federal law and state

law is only applicable when needed to fill in gaps in federal law."  Doc. No. 45-3,

Def.'s Ex. 24 at 2.  The Arbitrator denied the Union's motion, but did not

specifically rule on the preemption issue (although his written decision explained

the preemption arguments).  Doc. No. 45-5, Def.'s Ex. 26 at 3-4.  Instead, he found

the authority to decide the matter within the CBA itself, and applied principles

described in a federal National Labor Relations Board decision.  *See id*. at 4 (citing

*Anheuser-Busch, Inc.*, 237 N.L.R.B 982 (1978)).[2]

On April 15, 2013, the parties submitted simultaneous post-hearing

briefs to the Arbitrator.  Doc. No. 27, Def.'s CSF ¶ 19.  Among other arguments,

the Union contended that "[t]he appropriate remedy is for the Arbitrator to rescind

the termination of [Kelly], order the Employer to purge the employee's record of

any discipline related to insubordination, and order back pay with interest."  Doc.

No. 43-2, Def.'s Ex. 11 at 102.  For these powers, the Union cited (among other

---

[2]  As explained below, both parties point to this discovery proceeding as being relevant
towards an issue now before this court -- whether the Arbitrator committed manifest error in
awarding certain remedies under Hawaii law, *i.e.*, whether he specifically recognized federal
principles but then ignored them in favor of broader Hawaii standards.

sources) the Supreme Court's "*Steelworkers* Trilogy" as establishing guidelines for an arbitrator to fashion remedies.[3]  *Id.*  The Union argued that an arbitrator may "look for guidance from many sources" in formulating a remedy, and may look to "the industrial common law -- the practices of the industry and the shop" in interpreting a CBA.  *Id.* at 101-02 (quoting from, among other federal caselaw, *Warrior & Gulf Navigation Co.*, 363 U.S. at 581, and *Enterprise Wheel & Car Corp.*, 363 U.S. at 597).  But the Union also cited to Hawaii law for the proposition that labor arbitrators have "broad discretion to fashion appropriate remedies" that are "just and appropriate."  *Id.* at 100 (quoting *Hokama v. Univ. of Haw.*, 92 Haw. 268, 273, 990 P.2d 1150, 1155 (1999), *and* HRS § 658A-21, among other authorities).

    The Union sought "a make-whole remedy including reinstatement, back pay and reinstatement of rights and benefits."  *Id.* at 104.  It argued that "[t]o achieve a make-whole remedy[,] the Arbitrator may also order the Employer [to] purge the employee's record of the discharge, and restore all fringe benefits, and issue a cease and desist order."  *Id.* at 107.  It called for the Arbitrator "to sustain the grievance, set aside the discharge, remove any reference to the discharge from

---

[3]  *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960).

[Kelly's] employment records, and award him back pay with ten percent (10%) interest up until he is reinstated." *Id.* at 107. And as for interest, the Union cited to federal and state authorities indicating that "interest on the back pay award would be an essential component of a make whole remedy." *Id.* at 106. The Union cited to several Hawaii authorities that applied an interest rate of ten percent per year. *See id.* at 106 n.23 (citing Hawaii law indicating ten percent based on HRS § 478-3).

On the other hand, GP Roadway argued that the Arbitrator should uphold the decision to terminate Kelly, and deny the grievance. Doc. No. 27, Def.'s CSF ¶ 22. GP Roadway did not focus its arguments on limitations on a remedy, should the Arbitrator rule in Kelly's favor (and did not argue that a ten percent interest rate is preempted), *see* Doc. No. 31-3, Def.'s Ex. 12, although GP Roadway now points out that the parties were not provided an opportunity to file responsive briefs before the Arbitrator.

///

///

///

///

## 2.    *The Arbitrator's Decision*

Section 19 of the CBA describes the terms and procedures of grievances and arbitrations under the CBA.  In particular, paragraph 19(e) provides in part:

> All decisions of the arbitrator shall be limited expressly to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended or modified by the arbitrator. . . .  The arbitrator shall make a decision in the light of the whole record and shall decide the case upon the weight of all substantial evidence presented. . . .  All decisions of the arbitrator under this section including decisions following informal hearings shall be final and binding upon the parties.

Doc. No. 25-2, Pl.'s Ex. A at 9.  As for remedies, paragraph 19.4(g) provides:

> In any case of discipline where the arbitrator finds that such discipline was without cause or improper, *the arbitrator may set aside, reduce or modify the action taken by the Employer.  If the discipline is set aside, reduced or otherwise changed, the arbitrator may award back pay to compensate the employee wholly or partially for any wages lost because of the discipline*.  In determining the amount of the award for back pay, the arbitrator may deduct from the award sums received from unemployment compensation and other compensation received while the discipline was in effect.  All decisions of the arbitrator shall be in writing and a copy thereof shall be submitted to each of the parties.

Doc. No. 25-2, Pl.'s Ex. A at 9-10 (emphasis added).[4]

The Arbitrator issued his decision on May 15, 2013. Doc. No. 44-1, Def.'s Ex. 13. In a thirty-page "Decision and Award," he made a factual finding that GP Roadway "failed to meet its burden of proof to support a discharge for insubordination." *Id.* at 29.[5] He then made the following remedial award:

> Keeping the directives of Section 19.4 of the Agreement in mind, under Hawaii case law, arbitrators have "broad discretion to fashion appropriate remedies." *Hokama v. University of Hawaii*, 92 Hawaii 268, 273, 990 P.2d 1150 (1999). As noted in *Mathewson v. Aloha Airlines*, 82 Hawaii 57, 919 P.2d 969 (1996), arbitrators "may grant whatever remedy to right the wrongs he deems appropriate.["] *Id.* at 79 n.22, 919 P.2d at 991 n.22. Here, for the reasons discussed above, it is appropriate to award Grievant with back pay that would make him whole.
>
> Accordingly, GP (Grace Pacific) Roadway Solutions, Inc., shall (1) rescind the termination of Kuiola Kelly; (2) purge Kuiola Kelly's record of any discipline related to the May 11, 2012 incident; (3) reinstate Kuliola Kelly to his former position at GP

_____

[4] No exhibits were presented on the bargaining history of this (or any) provision of the CBA. Doc. No. 27-1, Oliver Decl. ¶ 15. The language in § 19.4(g) has apparently remained substantively unchanged from prior versions of the CBA, both with GP Roadway (as indicated in a CBA covering the period of September 1, 2006 to August 31, 2010) and with a predecessor company (as indicated in a CBA covering the period of March 1, 1996 to February 29, 1997). *Id.* ¶¶ 3-5, 8.

[5] Most of the Arbitrator's findings reviewed and assessed the evidence presented regarding the grievant's termination. The factual findings regarding the termination are not at issue in this action (GP Roadway is only challenging the remedy), and thus the court does not discuss these findings further.

> forthwith; (4) make full back pay, minus any
> unemployment compensation and other compensation
> received while the discipline was in effect; (5) restore
> contractual benefits including sick leave, vacation,
> retirement credit, and health fund contributions from the
> employer to the date of reinstatement; (6) restore Kuiloa
> Kelly's seniority; and (7) make payment of 10% interest
> on the amount of back pay.

*Id.* at 30.[6]

In accordance with the Arbitrator's decision, GP Roadway reinstated

Kelly on May 27, 2013. Doc. No. 27-1, Oliver Decl. ¶ 22. GP Roadway

calculated Kelly's net back pay as $24,298 (after subtracting income from another

source). This figure did not include contractual fringe benefits that the Arbitrator

awarded for vacation/holiday pay ($2,322), pension ($974), and applicable fund

contributions ($7,040) -- all of which were not paid pending this action. The

Union also calculated the ten percent interest award as $3,463 (which also has not

been paid, pending this action). Doc. No. 44-9, Def.'s Ex. 21; Doc. No. 27-1,

Oliver Decl. ¶ 23.

**B.    Procedural Background**

On June 2, 2013, GP Roadway filed its Complaint to Vacate

Arbitration Award under 29 U.S.C. § 185. Doc. No. 1. On June 26, 2013, the

---

[6]  The parties agreed at the hearing on these Cross-Motions that the Arbitrator's ten
percent figure was based solely on Hawaii law.

Union Answered, and filed its Counterclaim (1) seeking confirmation of the award, as well as (2) alleging that GP Roadway's failure to fully comply with the decision was contrary to public policy and lacked a reasonable basis such that the Union is entitled to costs and attorney's fees. Doc. No. 9.

The parties filed their Cross-Motions for Summary Judgment on April 16, 2014. Doc. Nos. 24, 26. Oppositions were filed on May 12, 2014, Doc. Nos. 35, 37, and Replies were filed on May 19, 2014. Doc. Nos. 48, 49. The court held a hearing on the Cross-Motions on June 2, 2014. Supplemental briefing was filed on July 7, 2014, and July 10, 2014. Doc. Nos. 57, 60.[7]

## III. DISCUSSION

### A. Standards for Judicial Review of an LMRA Arbitration Award

Federal courts have authority under Section 301 of the LMRA to

---

[7] The parties filed "Motions for Summary Judgment," although the relief they seek -- vacating or confirming the arbitration award -- is ordinarily not a matter requiring a traditional summary judgment analysis (such as determining whether disputes of fact exist). Rather, here, the arbitration's historical facts are not disputed, and the court applies well-developed legal standards (described below) to review the award. Accordingly, summary judgment is an appropriate procedural vehicle to decide these purely legal questions. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Line Drivers, Pickup & Delivery Local Union No. 81 v. Roadway Express Inc.*, 152 F.3d 1098, 1099 (9th Cir. 1998) (reviewing de novo the district court's grant of summary judgment confirming an arbitration award).

review an arbitration conducted under the terms of a CBA.[8]  *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001).  "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (reviewing an award under the Federal Arbitration Act ("FAA")); *cf. So. Cal. Gas Co. v. Utility Workers Union of Am., Local 132*, 265 F.3d 787, 796 (9th Cir. 2001) ("The party seeking to vacate the arbitration award bears the burden of showing that the award violates public policy.") (citing *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995)).

The court's review of an arbitration award under the LMRA, however, is extremely limited and highly deferential.  *See, e.g.*, *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1180 (9th Cir. 2001) ("[A court's] review of labor arbitration awards is . . . extremely deferential

---

[8]  Section 301 provides, in pertinent part:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

because courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." (internal citations and quotations omitted)). "Courts are not authorized to review the arbitrator's decision on the merits despite the allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)). "When an arbitrator resolves disputes regarding the application of a [CBA], and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987)). And so a court's task is to "determine *whether* the arbitrator interpreted the [CBA], *not* whether he did so correctly." *Haw. Teamsters & Allied Workers Union, Local 996*, 241 F.3d at 1178.

Courts accord great deference "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, [and] it is the arbitrator's view of the facts and of the meaning of the contract that

they have agreed to accept." *Misco*, 484 U.S. at 37-38. The highly deferential standard is based on the view that the arbitrator interpreting the CBA is "to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations." *Enter. Wheel & Car Corp.*, 363 U.S. at 597.

The Ninth Circuit has "recognized three *narrow* exceptions to the general rule of deferring to an arbitrator's decision:"

> (1) when the arbitrator's award does not 'draw its essence from the [CBA]' and the arbitrator is dispensing 'his own brand of industrial justice;' (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy.

*Foster Poultry Farms*, 74 F.3d at 173 (citations omitted).[9]

An arbitrator's award "draws its essence" from the CBA when it is "on its face . . . a plausible interpretation of the contract." *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 914 (9th Cir. 2007) (citation omitted); *see also Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) ("If . . . the award represents a plausible

---

[9] *Sprewell* also discusses a "[fourth] instance[] in which the vacatur of an arbitration award under section 301 is warranted," that is, "when the award is procured by fraud." 266 F.3d at 986. The fraud exception is not raised in this action.

interpretation of the contract, judicial inquiry ceases and the award must be enforced.").  And an award "draws its essence" from the CBA if the arbitrator is "even arguably construing or applying the [CBA] and acting within the scope of his authority."  *E. Associated Coal Corp.*, 531 U.S. at 62 (quoting *Misco*, 484 U.S. at 38).

Put differently, courts describe three situations where an arbitrator's decision does *not* "draw its essence" from the CBA:  (1) when an arbitrator "dispense[s] his own brand of industrial justice," *Enterprise Wheel*, 363 U.S. at 597; (2) in "egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract," *Sprewell*, 266 F.3d at 986-87 (citation omitted); and (3) "when the arbitrator determines that a specific provision of the [CBA] applies, but then declines to apply the plain language of that provision." *McCabe Hamilton & Renny Co. v. Int'l Longshore & Warehouse Union, Local 142*, 624 F. Supp. 2d 1236, 1244 (D. Haw. 2008).

In deciding whether an arbitrator's decision "draws its essence" from a CBA, Ninth Circuit caselaw often applies a "manifest disregard" standard (which is also applied in reviewing arbitration decisions under the FAA), *i.e.*, whether an arbitrator clearly "recognized the applicable law and then ignored it."  *See, e.g.*, *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 (9th Cir.

2012) ("[M]anifest disregard of the law is a narrow exception to the general principle of deference to arbitration awards. . . .   For an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it.") (discussing standards from the FAA in a Section 301 context) (citations and quotation marks omitted); *Bevles Co. v. Teamsters Local 986*, 791 F.2d 1391, 1392-93 & n.2 (9th Cir. 1986) (noting in an LMRA case that "to justify reversal of an [arbitration] award for an error in law that error must constitute a 'manifest disregard of the law'") (quoting *George Day Constr. Co. v. United Bhd. of Carpenters*, 722 F.2d 171, 1477 (9th Cir. 1984) (other citation omitted)); *id.* at 1394 (concluding that the arbitrator's decision "was not rendered in 'manifest disregard of the law,' and thus is not reviewable in this court"); *Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 527-28 (9th Cir. 1987) (upholding an LMRA arbitration award, rejecting the argument that arbitrators manifestly disregarded the law); *cf. Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.3d 1056, 1060 (9th Cir. 1991) (reiterating, in reviewing an award under the FAA, that "an arbitration award will not be set aside unless it evidences a 'manifest disregard for law'") (citing the "*Steelworkers* Trilogy" from

which LMRA standards are drawn).[10]

Nevertheless, "[o]rdinarily, an arbitrator is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the [CBA] although not expressed in it.'" *Haw. Teamsters & Allied Workers Union, Local 996*, 241 F.3d at 1181 (internal quotation marks and citations omitted); *see also Va. Mason Hosp.*, 511 F.3d at 915 ("An arbitrator is not . . . limited to the four corners of the CBA in interpreting its terms. He may also rely on 'the industrial common law -- the practices of the industry and the shop[.]'") (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 581-82). "This is particularly true if the express terms of the agreement leave gaps

---

[10] Many other courts also apply a "manifest disregard" analysis in determining whether an arbitrator's decision draws its essence from a CBA. *See, e.g., N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100*, 256 F.3d 89, 91 (2d Cir. 2001) ("To modify or vacate an award on manifest disregard, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.") (square brackets and citations omitted); *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) ("A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law. . . . and may only be reversed 'when arbitrators understand and correctly state the law, but proceed to disregard the same.'") (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961)); *Eisenmann Corp. v. Sheet Metal Workers Int'l Ass'n Local 24*, 323 F.3d 375, 380 (6th Cir. 2003) ("We have identified four ways by which an arbitrator may stray from the 'essence' of the collective bargaining agreement: . . . . In addition, courts may upset an arbitration award if it is rendered in 'manifest disregard of the law[.]') (citations omitted); *Int'l Longshore & Warehouse Union, Local 142 v. Grand Wailea Resort Hotel & Spa*, 2013 WL 4855267, at *14 (D. Haw. Sept. 10, 2013) (confirming an arbitration award under the LMRA, reasoning in part that "the Award does not show that the Arbitrator intentionally disregarded the law" in applying a manifest disregard standard -- "the record must indicate that the arbitrator 'recognized the applicable law and then ignored it'") (citation omitted).

that need to be filled, and 'for the vast array of circumstances [the parties] have not

considered or reduced to writing.'"  *Haw. Teamsters & Allied Workers Union,*

*Local 996*, 241 F.3d at 1181 (citations omitted).  *See, e.g.*, *SFIC Props., Inc. v. Int'l*

*Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94*, 103 F.3d 923, 925-26

(9th Cir. 1996) (stating that an arbitrator may infer a "just cause" requirement into

a CBA that is silent on the issue); *Int'l Ass'n of Machinists v. San Diego Marine*

*Constr. Corp.*, 620 F.2d 736, 738-39 (9th Cir. 1980) (finding that the arbitrator

properly determined whether conduct constituted "just cause" for firing where the

CBA did not specifically define "just cause").

## B.     Application of Standards

### 1.      *The Court Confirms the Award*

Applying the preceding standards, GP Roadway -- emphasizing the

Arbitrator's citation to Hawaii law for the general propositions that an arbitrator

has "broad discretion to fashion appropriate remedies" and "may grant whatever

remedy to right the wrongs he deems appropriate," Doc. No. 44-1, Def.'s Ex. 13 at

30 -- contends that the Arbitrator "dispensed his own brand of industrial justice" by

awarding remedies (beyond purely "back pay") that do not "draw their essence"

from the CBA.  Specifically, it argues that the Arbitrator's remedial award of

"contractual benefits including sick leave, vacation, retirement credit, and health

fund contributions from the employer to the date of reinstatement" and "payment

of 10% interest on the amount of back pay," *id.*, is inconsistent with the plain

language of the CBA.

The Union, on the other hand, points to the Arbitrator's prefatory

statement "[k]eeping the directives of Section 19.4 of the Agreement in mind," *id.*,

reasoning that this indicates the Arbitrator was specifically applying the

appropriate provision of the CBA. The Union contends that all of the remedies in

question (*e.g.*, fringe benefits, health fund contributions, and prejudgment interest)

are "make whole" remedies that are widely accepted as proper in wrongful

termination LMRA arbitrations. The remedies are, it reasons, proper

interpretations of the CBA and within the Arbitrator's powers, especially where the

parties asked the Arbitrator to choose an appropriate remedy if he found that

Kelly's termination was unwarranted.

The court concludes that the Arbitrator's remedial award constitutes,

on its face, a plausible interpretation of the clause "back pay to compensate wholly

or partially for any wages lost" set forth in § 19.4 of the CBA. It therefore "draws

its essence" from the CBA. *See, e.g.*, *Va. Mason Hosp.*, 511 F.3d at 914

(reiterating that an award "draws its essence from a CBA" when it is "on its

face. . . a plausible interpretation of the contract"). The court first explains its

reasoning as to "backpay," and then discusses the award of ten percent interest in more detail.

### 2. *"Back pay" and "Wages"*

In many labor and employment contexts (including prior interpretations of identical CBA provisions[11]), the terms "wages" and "backpay" include salary, associated benefits, and/or interest. *See, e.g.*, Black's Law Dictionary 159 (9th ed. 2009) (defining "backpay award" to mean "[a] judicial or quasi-judicial body's decision that an employee or ex-employee is entitled to accrued but uncollected wages or benefits"); *id.* at 1716 (defining "wage" to include "every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and . . . any similar advantage received from the employer"); The Back Pay Act, 5 U.S.C. § 5596(b)(1)(A) (including "an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned" as well as interest as the appropriate entitlement for "back pay due to unjustified personnel action").

Similarly, "back pay" often includes "make whole" relief. *See, e.g.*, *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 900 (1984) ("Of course, the general

---

[11] *See* Doc. Nos. 46-3, 46-5, & 46-7, Def.'s Exs. 29, 31 & 33.

legitimacy of the backpay order as a means to restore the situation as nearly as possible, to that which would have obtained but for the illegal discrimination, is by now beyond dispute.") (internal citation and quotation marks omitted); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1158 (9th Cir. 2001) (describing back pay as "the traditional labor relations make-whole remedy designed to compensate employees for their losses," and pointing out that "back pay" in many federal statutes has been interpreted to include tips, interest, and holiday and overtime pay); *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1473 (10th Cir. 1993) ("The purpose of a back pay award is to make the employee whole -- *i.e.*, restore the economic status quo that would have obtained but for the wrongdoing on the part of the employer and the union.") (citations omitted); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (stating that "[t]he purpose of back pay [under Title VII] is to completely redress the economic injury the plaintiff has suffered as a result of discrimination," and concluding that "[t]his award should therefore consist of lost salary, including anticipated raises, and fringe benefits") (citations and internal quotation marks omitted).

Given the many employment contexts in which the terms "back pay" and "wages" are used, it was certainly plausible for the Arbitrator to interpret an

20

award of "back pay" for "wages" under the CBA to include "make whole" relief.

And that there may be other contexts where "back pay" means *only* "back pay" (without benefits or interest) does not help GP Roadway.  The court "must defer to the arbitrator's decision on the grounds that he was, at the very least, 'arguably construing or applying the [CBA].'"  *Sprewell*, 266 F.3d at 987 (quoting *Misco*, 484 U.S. at 38).  GP Roadway argues that the "plain language" of the CBA restricts a remedy to "back pay" because the CBA does not use the term "make whole" relief.  This "plain language" argument, however, cuts both ways -- § 19.4 does not provide that an arbitrator may award "only" back pay to the exclusion of any other amounts, and if the parties intended that restriction then the CBA could have said so.  *See, e.g.*, *Amalgamated Transit Union, Local No. 1498 v. Jefferson Partners*, 229 F.3d 1198, 1201 (8th Cir. 2000) (rejecting employer's argument that the arbitrator acted outside his authority in imposing a remedy not expressly provided for in the CBA, reasoning that courts must defer to an arbitrator's choice of remedy, and "nothing in the contract prohibits" the chosen remedy).  Rather, given that the Arbitrator recognized (at least in part) that he was guided by § 19.4, it was reasonable for him to have interpreted "back pay" as compensation "wholly or partially" for "wages lost" to include make-whole relief that included amounts for fringe benefits and interest.

Moreover, the parties asked the Arbitrator to award "the appropriate remedies." *See* Doc. No. 32-1, Def's Ex. 13 at 2 (indicating that the parties agreed that the Arbitrator would decide "(1) whether the discharge of the grievant was in compliance with the terms of the [CBA], and (2) if not, what are the appropriate remedies for the grievant and the union."). Having done so, GP Roadway is hard pressed to now argue that the "appropriate remedy" of back pay and wages should be vacated. *See Misco*, 484 U.S. at 38 ("The parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.") (internal citations omitted); *Hyatt Corp. v. Unite Here Local 5*, 2012 WL 652098, at *7 n.5 (D. Haw. Feb. 29, 2012) (reasoning that "the parties specifically submitted the issue of the appropriate remedy to Arbitrator Kagel and it is for him to decide in the first instance what remedies are appropriate").

### 3. *The Arbitrator's Error Provides No Basis to Vacate the Award*

This is not to say that GP Roadway's arguments do not have at least some merit. The Arbitrator was wrong to cite to state law (and only state law) for

his broad authority to fashion appropriate remedies.  Rather, in arbitrations under

Section 301 of the LMRA, it is fundamental that substantive federal law applies.

*See, e.g.*, *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456

(1957) ("[T]he substantive law to apply in suits under § 301(a) is federal law,

which the courts must fashion from the policy of our national labor laws.").  The

Ninth Circuit has long recognized this "power Congress has given the federal

courts to fashion common law under Section 301 of the LMRA." *Am. President*

*Lines v. Int'l Longshore & Warehouse Union, Ak. Longshore Div.*, 721 F.3d 1147,

1155 (9th Cir. 2013).

Section 301 has "broad preemptive force."  *Roy Allan Slurry Seal v.*

*Laborers Int'l Union*, 241 F.3d 1142, 1146 (9th Cir. 2001).  And this preemptive

effect extends beyond "displac[ing] entirely any state cause of action for violation

of contracts between an employer and a labor organization," or "preempt[ing] state

law when resolution of a state-law claim depends upon the meaning of a [CBA]."

*Id.* (citations and quotation marks omitted).  More generally, "it mandates that

'substantive principles of federal labor law must be paramount in the area covered

by [Section 301]." *Id*. (quoting *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S.

95, 103 (1962)).  Section 301 requires that federal courts "fashion a body of federal

common law to be used to address disputes arising out of labor contracts." *Allis-*

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Preemption "stems from a longstanding concern that federal labor law be uniform, and that [CBAs] be interpreted uniformly." *Roy Allan Slurry Seal*, 241 F.3d at 1146 (citing *Lucas Flour Co.*, 369 U.S. at 103-04). Although "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy," *Textile Workers*, 353 U.S. at 457, "[a]ny state law applied . . . will be absorbed as federal law and will not be an independent source of private rights." *Id.*

And so, for example, "[i]t is a settled point of law that state attorneys fees provisions are completely pre-empted by § 301 when the arbitration award is litigated." *Teamsters Local 117 v. Davis Wire Corp.*, 187 F. Supp. 2d 1279, 1282 (W.D. Wash. 2001) (citing *Roy Allen Slurry Seal*, 241 F.3d at 1146-48; and *Warehouse, Processing, Distribution Workers Union v. Hugo Neu Proler Co.*, 76 Cal. Rptr. 2d 814 (Cal. App. 1998) (holding that a federal bad faith standard preempts state law attorney's fees provisions)).

Thus, to the extent the Arbitrator believes -- as his exclusive citation to Hawaii law might indicate -- that Hawaii law applies in this LMRA context, he is wrong. Even if arbitrators may have discretion to look to state law to "fill the gaps," it is erroneous (and sometimes "manifestly" erroneous) to ignore federal law

that is on point in interpreting a CBA.

Here, however, the general principles the Arbitrator cited (*i.e.*, an arbitrator has "broad discretion to fashion appropriate remedies," and "may grant whatever remedy to right the wrongs he deems appropriate," Doc. No. 44-1, Def.'s Ex. 13 at 30) are hardly unique to Hawaii law. Rather, they are general principles common to LMRA arbitrations and federal decisions confirming such awards.[12] That is, the same general principles apply under federal law. *See, e.g.*, *Ass'n of W. Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1091 (9th Cir. 2000) ("Arbitrators are granted wide latitude to fashion remedies appropriate to the situations they confront.") (citing *Sheet Metal Workers*, 84 F.3d at 1190; and *Misco*, 484 U.S. at 37-38); *Prate Installations, Inc. v. Chicago Reg'l Council of Carpenters*, 607 F.3d 467, 471 (7th Cir. 2010) ("Arbitrators must have flexibility to determine remedies, and the authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach.") (citations and internal quotation marks omitted). It follows that, just because the

---

[12] Indeed, the propositions in one of the Hawaii cases cited by the Arbitrator was, in turn, based on federal law. *See Mathewson v. Aloha Airlines, Inc.*, 919 P.2d 969, 991 n.22 (Haw. 1996) ("[A]rbitrators do have the power to fashion equitable relief," and "may grant whatever remedy is necessary to right the wrongs within their jurisdiction.") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) and *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 199 (4th Cir. 1990)). In that sense, the Arbitrator might just as well have been citing federal cases.

Arbitrator cited to state law, he did not necessarily impose his own "brand of industrial justice," ignore the plain language of the CBA, and award relief not plausibly based on § 19.4 of the CBA.

Essentially, then, the Arbitrator's error was harmless -- and in upholding the remedial award, the court is driven by the extremely deferential standard of review that courts apply. This court must confirm the award as long as the Arbitrator was "arguably interpreting the CBA," because the "question of interpretation of the [CBA] is a question for the arbitrator." *Virginia Mason Hosp.*, 511 F.3d at 914 n.2; *see also Garvey*, 532 U.S. at 509 ("[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.") (quoting *United Mine Workers*, 531 U.S. at 62). Given that standard, even though the Arbitrator erred, the court must still confirm the award as "drawing its essence" from the CBA.

///

///

///

///

///

### 4.    *The Ten Percent Interest Figure*[13]

The court has given particular scrutiny to the Arbitrator's award of ten percent interest under state law because, here, the Arbitrator's error made a difference -- interest rates under federal law (if applicable) are currently much lower.[14]  In this regard, it is undisputed that the Arbitrator applied Hawaii law (driven, perhaps, by the Union's citations in its arbitration brief) in awarding pre-

---

[13] Here, the court is focusing on the *rate* of interest.  The Arbitrator's decision to award interest by itself would ordinarily be a discretionary part of "make whole" relief.  *See, e.g.*, *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986) ("It is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back-pay award under the FLSA.") (quoting *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984) (emphasis added and brackets omitted).

[14] Title 28 U.S.C. § 1961 provides, in pertinent part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment. . . .

> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

Although § 1961 applies to post-judgment interest, Ninth Circuit law uses § 1961 as at least a starting point for pre-judgment interest.  *See, e.g.*, *Ford*, 785 F.2d at 842.  The applicable rate is available at http://www.federalreserve.gov/releases/h15/current (last visited July 24, 2014), and is currently approximately 0.11 percent (very much lower than the ten percent in HRS § 478-3).  Given this discrepancy, if this federal rate applies, it obviously makes a difference.

arbitration-award interest.[15]  The question is whether the arbitrator's award of

interest must be vacated -- given Ninth Circuit precedent (*Ford v. Alfaro*, 785 F.2d

835, 842 (9th Cir. 1986), and similar cases) holding that a federal statutory rate

applies (at least initially) and given the large differences in state and federal

interest rates.  Ultimately, however, the error was not in "manifest disregard" of the

law and still drew its essence from the CBA.

   The analysis is complicated because some non-binding federal

caselaw indicates that a federal court indeed has discretion to use a state-law

statutory interest rate in awarding prejudgment interest when confirming an LMRA

arbitration award, or in other LMRA contexts.  *See, e.g.*, *Lodges 743 & 1746, Int'l*

*Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975)

(observing that in LMRA § 301 actions, while the district court has discretion

whether to grant interest, "it may be proper, as a matter of convenience, to look to

state law in order to determine the appropriate rate"); *New York City Dist. Council*

*of Carpenters v. Gen-Cap Indus.*, 2012 WL 2958265, at *4 (S.D.N.Y. July 20,

2012) ("The 'common practice' among courts within the Second Circuit is to grant

---

[15]  The Arbitrator's award covers the "pre-arbitration-award" period from the date of
Kelly's termination until May 15, 2013 (the date of his arbitration award) -- which is distinct
from the "prejudgment" period measured from the date of the arbitration award until the court's
judgment in this federal action.  To avoid confusion, the court refers to the first period as "pre-
arbitration-award interest" and the second period as "prejudgment interest."

interest at a rate of nine percent per annum -- which is the rate of prejudgment

interest under New York State law, N.Y. C.P.L.R. §§ 5001-5004 -- from the time

of the award to the date of the judgment confirming the award."); *Int'l Bhd. of*

*Elec. Workers, Local 58 v. Metro Elec. Eng'g Techs., Inc.*, 880 F. Supp. 2d 770,

777-78 (E.D. Mich. 2012) (applying Michigan prejudgment interest rate); *Kalmar*

*Indus. USA LLC v. Int'l Bhd. of Teamsters Local 838*, 452 F. Supp. 2d 1154, 1167

(D. Kan. 2006) (applying Kansas statutory ten-percent prejudgment interest rate);

*USF Reddaway, Inc. v. Teamsters Union, Local 162*, 230 F. Supp. 2d 1180, 1183

(D. Or. 2001) (awarding prejudgment interest from the "date the wage increase was

due," rather than the date of the arbitration award).  And so, under this standard,

applying federal law would simply give a court -- or an arbitrator -- the discretion

to choose state law.

   For the most part, however, this discretion arises from a recognition

that a gap exists in federal law regarding the rate of prejudgment interest.  *See, e.g.*,

*United Aircraft Corp.*, 534 F.2d at 446 n.42 ("28 U.S.C. § 1961 [(which provides a

federal interest rate on any "money judgment in a civil case recovered in a district

court")] relates only to interest recoverable on the judgment itself and says nothing

whatever about whether prejudgment interest is appropriate in a given case[.]");

*Kalmar Indus. USA LLC*, 452 F. Supp. 2d at 1167 ("Because § 301 does not

specify a rate of interest, the Court looks to Kansas law."); *Colon Velez v. Puerto Rico Marine Mgmt., Inc.*, 957 F.2d 933, 941 (1st Cir. 1992) ("Because [§ 301 of the LMRA] is silent as to pre-judgment interest and the granting of pre-judgment interest falls under the equitable powers of the district court, the court may look to state law in setting the pre-judgment interest rate.").

The Ninth Circuit, however, has a different rule (and apparently stands alone among the Circuits) -- "[a]lthough section 1961 does not speak to pre-judgment interest . . . the same rate should be applied to pre-judgment interest 'unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate.'" *Ford*, 785 F.2d at 842 (quoting *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)); *see also, e.g.*, *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007) ("Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.") (citations and internal quotation marks omitted).

That is, there is no gap in Ninth Circuit law that an arbitrator could fill with state law. Here, if the Arbitrator properly applied federal law, he would have had to at least begun with the federal rate set forth in § 1961 (and only then, if

particular circumstances warranted, make specific findings justifying a different rate). *Blankenship*, 486 F.3d at 628. But he did not. He simply awarded ten percent interest based on Hawaii law. And if he had specifically recognized the lower federal rate, but then chose to apply a much higher Hawaii interest rate to impose his own "brand of justice," then he would have "manifestly disregarded" the law. *See, e.g.*, *Matthews*, 688 F.3d at 1115 ("For an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it.").[16]

But the record here gives no indication that the Arbitrator specifically recognized and then ignored a federal interest rate, or even knew that the Hawaii rate was much more generous. Even assuming he knew (from the prior discovery dispute) that federal principles in general apply, he was not presented with the federal rates or Ninth Circuit law requiring initial consideration of § 1961. Moreover, federal law in this regard is mixed. Many federal cases apply state

---

[16] Although some other federal jurisdictions give courts the discretion to apply state law, an arbitrator in Hawaii applying federal law would look to Ninth Circuit law as the appropriate source of federal law. For example, it would be implausible and manifestly erroneous for a Hawaii arbitrator (recognizing the mandate to apply federal law) to deliberately ignore Ninth Circuit law in favor of a different circuit's law. *See N.Y. Tel. Co.*, 256 F.3d at 93 ("The arbitrator explicitly rejected [in-Circuit precedent], relying instead on two (more recent) opinions from outside this Circuit. These opinions are not the law of this Circuit; it was therefore "manifest disregard of the law" for the arbitrator to reject [in-Circuit precedent] and apply another rule.") (citations omitted).

prejudgment rates (and even Ninth Circuit law appears to allow a state rate, if particular equitable circumstances exist and are justified by the evidence). *Cf. Bevles Co.*, 791 F.2d at 1394 ("Given the confused state of the law . . . it is arguable that no determination by the arbitrator regarding the impact of that section could be 'in manifest disregard of the law."). Thus, given the highly deferential standard that applies (and because the court cannot find a conscious, "manifest disregard" of the law), the court concludes that the Arbitrator's award of ten percent interest drew its essence from the CBA.[17]

In short, despite the Arbitrator's error, the court CONFIRMS the Arbitrator's award of $3,463 in interest

## C.    The Court Denies the Union's Motion Seeking an Award of Costs and Attorney's Fees

Although the court rejects Plaintiff's view that the Arbitrator's remedial award did not draw its essence from the CBA, the court nevertheless denies the Union's request for an award of costs and fees for having to respond to

---

[17] To be sure, there is eminent reason for the "nearly unparalleled degree of deference" that courts give to LMRA arbitration decisions. *Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1205 (9th Cir. 1989) (en banc). "Arbitrators' awards are not judicial opinions. They are ad hoc documents which express the meaning of a [CBA] as applied to a particular set of facts." *Id.* at 1206. Indeed, in many LMRA disputes, "[a]rbitrators are generally not lawyers . . . [and the] opinion and award the arbitrator writes is a document intended to answer a specific question rather than set forth any legal principles." *Id.* An LMRA arbitrator "is speaking for the parties, and his award *is* their contract." *Id.* at 1205 (quoting St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny*, 75 Mich. L. Rev. 1137, 1140 (1977)).

Plaintiff's suit.

Under the LMRA, the Union's claim for attorney's fees is examined under a bad-faith standard. *See, e.g.*, *Roy Allen Slurry Seal*, 241 F.3d at 1148. Under such a standard, "[a] prevailing party may receive attorneys' fees if his adversary 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Wellman v. Writers Guild of Am., W., Inc.*, 146 F.3d 666, 674 (9th Cir. 1998) (quoting *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus. Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996)). And "an unjustified refusal to abide by an arbitrator's award may equate to an act taken in bad faith, vexatiously or for oppressive reasons." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359*, 84 F.3d at 1192 (quoting *Int'l Union of P.I.W. v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983)). "[T]he award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984).

GP Roadway's position was not unjustified, frivolous, or taken in bad faith. Rather, it made a credible argument that the Arbitrator was only authorized in the CBA to award "back pay" and no more. Indeed, it succeeded in demonstrating that the Arbitrator erred in applying state law, although ultimately

the award was not vacated. Under these circumstances, an award of costs or fees to the Union is not warranted. *See, e.g.*, *Hyatt Corp.*, 2012 WL 652098, at *7 (denying request for fees in an LMRA appeal, reasoning that "[a]lthough the court ultimately rejected Hyatt's arguments against dismissal of this action, the court finds that Hyatt's Motion . . . was not brought in bad faith").

**D.      The Union Is Entitled to Prejudgment Interest on Most of the Award**

Lastly, the court awards prejudgment interest to the Union on the Arbitrator's award. *See, e.g.*, *Ford*, 785 F.2d at 842 ("[P]re-judgment interest is necessary to fully compensate employees for the losses they have suffered.") (citations omitted). Indeed, as noted above, "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award under the FLSA." *Id.* (quoting *Donovan*, 726 F.2d at 58 (emphasis added and brackets omitted)). In this context, an award of interest has long been accepted as the norm. *See N.L.R.B. v. Local 138, Int'l Union of Operating Eng'rs, AFL-CIO*, 385 F.2d 874, 878 & n.22 (2d Cir. 1967) ("The [NLRB] adopted the policy of imposing interest on remedial back pay orders in *Isis Plumbing and Heating Co.*, 138 NLRB 716 [(1962),] . . . . The Courts of Appeals in at least seven circuits . . . have upheld this policy with respect to back pay orders.") (citing cases).

The court awards interest at the rate and under the terms set forth in

28 U.S.C. § 1961.  *See, e.g.*, *Blankenship*, 486 F.3d at 628 ("Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest[.]").  To be precise, this award of prejudgment interest dates back to May 15, 2013 -- the date of the Arbitrator's decision.  *See, e.g.*, *United Food & Commercial Workers Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 949 (10th Cir. 1989) ("The granting of prejudgment interest *from the date of the arbitrator's award* in an action seeking to confirm that award is a question of federal law entrusted to the sound discretion of the district court.") (emphasis added); *Cessna Aircraft Co. v. Avcorp Indus., Inc.*, 943 F. Supp. 2d 1191, 1199 (D. Kan. 2013) ("[T]he court determines that an award of post-award, prejudgment interest is just and will fairly compensate defendant for the lost use of the arbitration award from the date it was due[.]"); *N.Y. City Dist. Council of Carpenters*, 2012 WL 2958265, at *4 (awarding prejudgment interest in confirming an LMRA arbitration "from the time of the [arbitration award] to the date of the judgment confirming the award") (citations omitted).

Further, the equities of this particular case call for an additional adjustment.  *See Blankenship*, 486 F.3d at 628.  As discussed in detail above, the court has upheld the Arbitrator's pre-arbitration-award of $3,463 in interest, despite an improper application of state law.  The court thus declines to award

prejudgment interest on the Arbitrator's award of interest.  Whether or not the court could otherwise award "interest on interest," under these circumstances, it would be inequitable to award interest on this amount.  Essentially, the court is lowering its award of prejudgment interest to account for the equities unique to this case.[18]  Excluding this $3,463, the prejudgment interest is awarded on $34,634 ($24,298 of net lost income, fringe benefits of $2,322, pension contributions of $974, and applicable fund contributions of $7,040.  Doc. No. 44-9, Def.'s Ex. 21).

///

///

///

///

///

///

///

///

///

///

---

[18]  In any event, the difference is minuscule -- 0.11 percent of $3,463 is approximately $3.81 per year.

# IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, seeking to vacate the arbitration award, Doc. No. 24, is DENIED.  Defendant's corresponding Cross-Motion for Summary Judgment, Doc. No. 26, is GRANTED in part and DENIED in part.  The arbitration award is CONFIRMED.  Finding no bad faith on the part of Plaintiff, the court DENIES Defendant's request for an award of costs and attorney's fees on that basis.  The court also awards prejudgment interest to Defendant on the arbitration award (excluding the $3,463 of interest in that award).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 29, 2014.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*GP Roadway Solutions, Inc. v. Laborers Int'l Union of N. Am. Local 368*, Civ. No. 13-00282 JMS-KSC, Order (1) Denying Plaintiff's Motion for Summary Judgment; and (2) Granting in Part and Denying in Part Defendant's Motion for Summary Judgment

37